1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ECHOTA C. WOLFCLAN,
,

               Plaintiffs,

     v.

JILMA MENESSES, *et al.,*

               Defendants.

Case No.

**COMPLAINT**

**Jury Demanded**

## I.     JURISDICTION

1.    This action arises from Defendants' failure to provide for the Plaintiff Echota C. Wolfclan's serious medical and mental health needs, failure to provide treatment, failure to comply with a Court Order requiring Mr. Wolfclan's transfer to an inpatient psychiatric care facility, and other legal obligations concerning Mr. Wolfclan's serious medical and mental health needs, which occurred in Pierce County, Washington.

2.    This action is related to Case Number 23-cv-05938-JLR-MLP currently pending before this court.

3.    This action is brought pursuant to the Fourth and Fourteenth Amendment to the United States Constitution; and the laws and Constitution of the State of Washington.

**COMPLAINT - 1**

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

4.     This Court has the authority to award costs and attorneys' fees under 42 U.S.C. §1988, 20 U.S.C. § 1415.

5.     Venue is proper in this pursuant to RCW 36.01.050.

6.     Mr. Wolfclan filed a tort claim with the State of Washington more than sixty (60) days prior to the filing of this Amended action consistent with RCW 4.92.100 and 110. Therefore, any of Plaintiff's claims against Defendants that required the filing of a tort claim have been properly filed, the administrative claim requirement has been met, and this Court has jurisdiction over Mr. Wolfclan's state law claims.

## II. PARTIES

### A. PLAINTIFF

7.     Plaintiff, Echota C. Wolfclan (formerly known as Justin Allen Davey), is a mentally ill individual who is currently incarcerated at Airway Heights Correctional Center. The actions and non-actions of the below Defendants demonstrated their deliberate indifference to the serious physical and mental health needs of Mr. Wolfclan, and constituted unnecessary and wanton infliction of pain, and suffering.

### B. DEFENDANTS

8.     Since May of 2016 Defendant Thomas J. Kinlen has been the Director of the Office of Forensic Mental Health Services, within the Behavioral Health Administration of the Washington State Department of Social and Health Services ("DSHS").  In that position, Mr. Kinlen is responsible for the delivery of forensic services in the State of Washington, which includes competency to stand trial evaluations, competency restoration, and not guilty by reasons of insanity evaluations.  He is also responsible for establishing consistent policies, procedures, and practices across the competency sites and State Hospitals; assisting forensic evaluators in completing job duties as assigned; supervising and training DSHS employees who make admitting decisions; and working with the key stakeholders

**COMPLAINT** - 2

across the state in addressing any issues and concerns related to forensic patients, including intake.  As a policymaker, Defendants Kinlen set in place an established practice of indefinitely incarcerating incompetent defendants while they awaited competency restoration.  This established practice was due to his deliberate indifference to these pretrial detainees rather than a lack of available resources.   He acted in a tortious and/or constitutionally violative fashion in formulating and administering policies, procedures, practices, and customs within DSHS that are deliberately indifferent to the rights and safety of mentally ill pretrial detainees, including, for example:

   a.  Placing pretrial detainees on arbitrary so-called "waiting lists," requiring them to wait weeks and months before they are admitted for restorative treatment.

   b.  Not informing courts, District Attorneys, defense counsel, or the patient's next of kin of the delay in admitting the patient.

   c.  Doing no triage or psychiatric acuity review of patients before placing them on any alleged "waiting list."

   d.  Not informing courts or the patient's treatment team in jail of the delay the patient will be forced to endure before being admitted to an inpatient psychiatric treatment facility.

   e.  Making no effort to place the patient at another hospital or residential mental health treatment facility or properly equipped jail with a legally compliant treatment facility.

   f.  Providing no treatment in jail for patients that it has been ordered to treat.

   g.  Not providing jails or jail treatment teams with a triage, psychiatric acuity review, or priority admission for the patient.

   h.  Not informing jails or jail treatment teams of their obligation to admit patients in need of inpatient psychiatric treatment to non-DSHS hospitals or treatment facilities.

**COMPLAINT** - 3

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

i.   Requiring the patient to languish in jail while the DSHS Defendants, including Defendant Kinlen himself, fail to admit them.

j.   Not admitting patients until receiving an Order to Show Cause why Defendants should not be held in contempt or a Motion to Dismiss—a determinant that has nothing to do with a lack of available resources of patient need.

k.   Screening and decisions concerning Mr. Wolfclan, and his handling of the Court Order discussed below that ordered and required Mr. Wolfclan to be admitted for inpatient psychiatric treatment.

9.   Defendant Jilma Menesses, Secretary of DSHS, is responsible for supervising and training DSHS employees who make admitting decisions. As a policymaker, Defendant Menesses set in place an established practice of indefinitely incarcerating incompetent defendants while they awaited competency restoration. This established practice was due to their deliberate indifference to these pretrial detainees rather than a lack of available resources. She acted in a tortious and/or constitutionally violative fashion in their formulating and administering policies, procedures, practices, and customs within DSHS that are deliberately indifferent to the rights and safety of mentally ill pretrial detainees, including for example:

a.   Placing pretrial detainees on arbitrary so-called "waiting lists," requiring them to wait weeks and months before they are admitted for restorative treatment.

b.   Not informing courts, District Attorneys, defense counsel, or the patient's next of kin of the delay in admitting the patient.

c.   Doing no triage or psychiatric acuity review of patients before placing them on any alleged "waiting list."

d.   Not informing courts or the patient's treatment team in jail of the delay the patient will be forced to endure before being admitted to an inpatient psychiatric treatment facility.

**COMPLAINT - 4**

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

e.  Making no effort to place the patient at another hospital or residential mental health treatment facility or properly equipped jail with a legally compliant treatment facility.

f.  Providing no treatment in jail for patients that it has been ordered to treat.

g.  Not providing jails or jail treatment teams with a triage, psychiatric acuity review, or priority admission for the patient.

h.  Not informing jails or jail treatment teams of their obligation to admit patients in need of inpatient psychiatric treatment to non-DSHS hospitals or treatment facilities.

i.  Requiring the patient to languish in jail while the DSHS Defendants, including Defendant Menesses himself, fail to admit them.

j.  Not admitting patients until receiving an Order to Show Cause why Defendants should not be held in contempt or a Motion to Dismiss—a determinant that has nothing to do with a lack of available resources of patient need.

k.  Screening and decisions concerning Mr. Wolfclan, and his handling of the Court Order discussed below that ordered and required Mr. Wolfclan to be admitted for inpatient psychiatric treatment.

10.   Charles Southerland interim CEO Western State Hospital is responsible for the overall operation, strategic direction and oversight of Western Washinton Hospital including supervising and training Western Washinton Hospital employees who make admitting decisions. As a policymaker, Defendant Southerland set in place a policy or practice that established practice of delaying competency restoration of forensic detainees. This established practice was due to their deliberate indifference to these pretrial detainees rather than a lack of available resources. She acted in a tortious and/or constitutionally violative fashion in their formulating and administering policies, procedures, practices, and

**COMPLAINT - 5**

LOWE GRAHAM JONES™

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

customs within DSHS that are deliberately indifferent to the rights and safety of mentally ill pretrial detainees, including for example:

a.   Placing pretrial detainees on arbitrary so-called "waiting lists," requiring them to wait weeks and months before they are admitted for restorative treatment.

b.   Not informing courts, District Attorneys, defense counsel, or the patient's next of kin of the delay in admitting the patient.

c.   Doing no triage or psychiatric acuity review of patients before placing them on any alleged "waiting list."

d.   Not informing courts or the patient's treatment team in jail of the delay the patient will be forced to endure before being admitted to an inpatient psychiatric treatment facility.

e.   Making no effort to place the patient at another hospital or residential mental health treatment facility or properly equipped jail with a legally compliant treatment facility.

f.   Providing no treatment in jail for patients that it has been ordered to treat.

g.   Not providing jails or jail treatment teams with a triage, psychiatric acuity review, or priority admission for the patient.

h.   Not informing jails or jail treatment teams of their obligation to admit patients in need of inpatient psychiatric treatment to non-DSHS hospitals or treatment facilities.

i.   Requiring the patient to languish in jail while the DSHS Defendants, including Defendant Sutherlin himself, fail to admit them.

j.   Not admitting patients until receiving an Order to Show Cause why Defendants should not be held in contempt or a Motion to Dismiss—a determinant that has nothing to do with a lack of available resources of patient need.

**COMPLAINT - 6**

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

k. Screening and decisions concerning Mr. Wolfclan, and his handling of the Court Order discussed below that ordered and required Mr. Wolfclan to be admitted for inpatient psychiatric treatment.

11. Defendant DSHS is a governmental agency of the State of Washington. DSHS was at all times relevant to this Complaint charged with providing timely court-ordered competency restoration services for mentally ill pretrial detainees, such as Mr. Wolfclan. DSHS is sued under state law for damages arising out of its tortious conduct only, to the extent allowed by RCW 4.92.090. *See, e.g., H.B.H. v. State*, 429 P.3d 484, 497 (Wash. 2018).

12. Defendants Kinlen, Menesses, Sutherlin, and DSHS shall be referred to collectively as "Defendants." At all material times, each Defendant acted under color of law and was a state actor.

## III. FACTS

**A. Washington State's Competency Services**

13. DSHS is charged under Washington law with overseeing competency services, including in-jail evaluations. RCW 10.77 *et seq.*

14. If an individual is found to be incompetent to stand trial, state law places a responsibility on DSHS for "providing mental health treatment and restoration of competency." RCW 10.77.088; *see also* RCW 10.77.084; RCW 10.77.086.

15. When a court has ordered an individual to receive an in-jail competency evaluation, the individual's criminal case is stayed during all competency-related proceedings. RCW 10.77.084.

16. DSHS typically provides competency evaluations in local jails. RCW 10.77.060.

17. The process begins when there is reason for a judge or an attorney to doubt that an individual charged with a crime is competent to stand trial. Because state and federal

**COMPLAINT** - 7

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

law forbid the criminal prosecution of individuals who do not understand the charges against them or are unable to aid in their own defenses, courts order that these individuals' competency be evaluated to determine whether they may stand trial. RCW 10.77.060.

18.     When a court orders a competency evaluation, the court order and other necessary documents are sent to a DSHS employee, who then assigns the case to an evaluator.

19.     In order to complete an in-jail evaluation that conforms with Washington's statutory requirements, the evaluator requires the following documents: (1) the court order; (2) the charging documents; and (3) discovery (e.g., criminal history, police reports).

20.     Washington law requires court clerks and prosecuting attorneys to provide DSHS with the court order, charging documents, and discovery within twenty-four hours of the signing of a court order for an evaluation. RCW 10.77.075.

21.     While evaluators require access to the necessary documentation, the in-jail evaluation is based primarily on a thirty-to-ninety-minute face-to-face interview with the individual.

22.     On average, completing a quality in-jail evaluation requires between ten to fourteen hours of work by the evaluator.

23.     After completion of the evaluation, the evaluator provides his or her report and recommendation to the court in which the criminal proceeding is pending. RCW 10.77.065.

24.     If the court finds the individual competent to stand trial, the criminal prosecution resumes. If the court finds the individual incompetent, the proceedings are stayed and the court may enter a competency restoration order as allowed by RCW 10.77.086 or RCW 10.77.088.

25.     If the court orders that an incompetent individual receive competency restoration services, the individual is placed on a list for admission to one of the state

**COMPLAINT** - 8

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

hospitals or alternative restoration facilities, where DSHS provides competency restoration services.

26.     In 2012, the Washington state legislature enacted Senate Bill 6492, which created a seven-day target deadline for providing court-ordered competency services for individuals detained in jails. RCW 10.77.068.

27.     The 2012 statute included a legislative purpose section that stated:

The purpose of this act is to sustainably improve the timeliness of services related to competency to stand trial by setting performance expectations, establishing new mechanisms for accountability, and enacting reforms to ensure that forensic resources are expended in an efficient and clinically appropriate manner without diminishing the quality of competency services, and to reduce the time defendants with mental illness spend in jail awaiting evaluation and restoration of competency. This act is necessary for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions, and takes effect May 1, 2012.

28.     On August 4, 2014 Cassie Cordell Trueblood, next friend of Ara Badayos, an incapacitated person, and the Snohomish County Public Defender Association, a non-profit corporation, brought suit against DSHS, DSHS Secretary Kevin W. Quigley, WSH's Certified Executive Officer Ron Alder, and WSH's Medical Director Dr. Brian Waiblinger. Complaint, *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, No. 14-1178 (W.D. Wash. Aug. 4, 2014), Dkt. # 1.

29.     The *Trueblood* plaintiffs alleged in their Complaint as follows, in relevant part:

Since July 2, Defendants have done nothing to comply with the [court] order to transport and treat Ms. Badayos. As of today, August 4, Ms.

**COMPLAINT** - 9

Badayos is still waiting in solitary confinement. In response to Ms. Trueblood's demand that WSH show cause for its failure to transport Ms. Badayos, Defendant Dr. Brian Waiblinger (WSH's Medical Director) submitted a sworn declaration (dated July 30). The declaration states that the current waitlist for transportation to WSH is "approximately 100 [patients]," and that the average wait is "51 days."        The declaration also states that WSH anticipates transporting Ms. Badayos "by the third week in August." . . . In this apparent belief in the total lack of any timeline, Defendants have developed an "algorithm" to determine which patients should be transported first. Defendants concede that this system is not on a first-come, first- served basis.  The algorithm always prioritizes other categories of criminally- involved patients over individuals requiring competency restoration. These categories include those patients who have been found Not Guilty by Reason of Insanity (NGRI) and "criminal conversion" patients (meaning they are civilly committed after their criminal action has been dismissed). Defendants' algorithm also places certain categories of restoration patients before others. Ms. Badayos' category, arbitrarily, is located towards the end of this prioritization scheme. In any event, Defendants confidently assert that they are under no deadline whatsoever to transport any felony restoration patient Defendant's algorithm, in prosecutorial fashion, perversely benefits those who have admitted the acts underlying their criminal conduct over those who have an unconditional right to dispute their charges. In this respect, Defendant's system incentivizes Plaintiffs to put their clients through the NGRI process rather than having those clients evaluated for basic legal competence to understand the criminal process. . . . County jails are punitive environments—not restorative.  They do not provide adequate,

**COMPLAINT** - 10

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1    if any, services for the mentally ill [P]risons and jails, which tend to be

2    environments that exacerbate the symptoms of mental illness, inmates with

3    mental illness are especially at risk of harming themselves or others [Ms.

4    Badayos] is, and has been, isolated in this 8' by 10' cell for 23 hours per day

5    for 17 the past 33 days. The cell contains a granite slab for a bed with a 1⁄4"

6    thick piece of rubber padding, a blanket, a fixed, backless stool, concrete

7    bench, and an aluminum toilet. She is allowed out of her cell for one hour a

8    day. During that hour she remains in hand and leg restraints unless she

9    chooses to shower, which she rarely does. Jail staff will not remove her from

10   the cell even to meet with her attorney; Ms. Trueblood is forced to

11   communicate with Ms. Badayos through a closed, locked metal door with a

12   small plexiglass window and hole for a food tray. Were she not involved in

13   Washington State's criminal justice system, Ms. Badayos would be in a

14   community-based in-patient professional mental health facility.

15         30.    The *Trueblood* plaintiffs alleged four causes of action in their Complaint: (1)

16   violation of "substantive due process" for "unnecessarily extended confinement, additional

17   injury to the mental state of these individuals, and violation of the constitutional rights to

18   physical freedom and medical treatment"; (2) violation of equal protection for "being held

19   without a speedy trial *date*, without the ability to consult with counsel, and without the

20   constitutionally mandated medical regime to restore [her] to competency"; (3) "cruel and

21   unusual punishment" for "[i]ncarcerating Ms. Badayos for an indefinite period of time

22   without essential psychotropic medication" or "staff or facilities qualified or adequate to

23   provide mental health care and restorative treatment"; and (4) "affective assistance of

24   counsel" for "directly and proximately caus[ing] a surge in hours worked by attorneys

25   seeking compliance by Defendants on behalf of their clients."

26

**COMPLAINT** - 11

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

31.     In their Complaint the *Trueblood* plaintiffs also sought injunctive and declaratory relief, money damages, and attorney's fees and costs.

32.     On September 12, 2014, the *Trueblood* plaintiffs filed a Second Amended Complaint that completely revamped the lawsuit. The Second Amended Complaint: (1) added a number of similarly-situated individually-named plaintiffs, as well as Disability Rights Washington, a nonprofit; (2) sought to establish as a class:

> All persons who are now, or will be in the future, charged with a crime in the State of Washington, and: (a) who are ordered by a court to either be evaluated for competency or to receive competency restoration services; and (b) who have waited for court-ordered competency evaluation or restoration services for seven or more days from the date on which the court order was entered. (3) named just two causes of action: a violation of the Fourteenth Amendment and the ADA; and (4) sought injunctive and declaratory relief and attorney's fees only (not money damages).

33.     The Second Amended Complaint filed in *Trueblood*, filed on September 12, 2014, was brought under FRCP 23(b)(2) and sought declaratory and injunctive relief rather than monetary damages. As such, individual damages for Trueblood Class Members were not available.

34.     In early 2015, the legislature passed Senate Bill 5889 to amend the seven-day target deadline contained in 2012's Senate Bill 6492.

35.     RCW 10.77.068 now establishes "[a] performance target of seven days or less" and a "maximum time limit of fourteen days" for a state hospital to extend an offer of admission to a defendant in pretrial custody for legally authorized inpatient restoration treatment.

**COMPLAINT** - 12

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

36.     As of April 2015, however, the state was not in compliance with the law. For individuals adjudicated incompetent to stand trial the wait times until admission for restoration averaged 39 days at WSH and 90.8 days at Eastern State Hospital ("ESH"). 1

37.     On April 2, 2015, the *Trueblood* court held that DSHS "must admit persons ordered to receive competency restoration services into a state hospital within seven days of the signing of a court order calling for restoration services" in order to be in compliance with the Fourteenth Amendment of the U.S. Constitution. *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 101 F. Supp. 3d 1010, 1023-24 (W.D. Wash. 2015).

38.     Judge Pechman summarized the reasons for this holding as follows:

> The State of Washington is violating the constitutional rights of some of its most vulnerable citizens. The State has consistently failed to provide timely . . . restoration services, services needed to determine whether individuals understand the charges against them and can aid in their own defenses, which is required in order for them to stand trial. By failing to provide . . . restoration services within seven days of a court order, the State fails to provide both the substantive and procedural due process required by the Constitution. Our jails are not suitable places for the mentally ill to be warehoused while they wait for services. Jails are not hospitals, they are not designed as therapeutic environments, and they are not equipped to manage mental illness or keep those with mental illness from being victimized by the general population of inmates. Punitive settings and isolation for twenty-three hours each day exacerbate mental illness and increase the likelihood that the individual will never recover. . . . [DSHS] has failed to change its procedures to respond to this ongoing crisis . . . . In order to stop these continued violations, the Court enters a permanent injunction requiring the provision of competency services within seven days. . . . The mentally ill are

**COMPLAINT** - 13

LOWE GRAHAM JONES ᴘ ʟ ʟ ᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

deserving of the protections of the Constitution that our forefathers so carefully crafted. The rights protected can be difficult and sometimes costly to secure; however, the Constitution is a guarantee to all people, and is not dependent upon a price tag. The State must honor its obligations under the law.

*Id.*, at 1013.

39.    DSHS responded to the Trueblood decision by adopting a number of significant reforms and innovative practices. These included:

• Creating the Office of Forensic Mental Health Services to provide better coordination, management, and oversight of forensic evaluations and treatment across the state.

• Creating two alternate, locked facilities to provide competency restoration, with a joint capacity of 54 beds.

• Adding 15 beds at WSH and 30 beds at ESH that could be used for a variety of forensic populations, including competency restoration.

• Establishing pilot programs to divert individuals from the criminal justice system.

• Implementing uniform court orders for hospital admissions.

40.    As a result of these changes, as of January of 2017 wait times for inpatient competency restoration services had decreased from 54.7 days in May of 2015 to 7.5 days at ESH and from 38.6 days in April of 2015 to 28.8 days at WSH.

41.    Jails are inherently punitive institutions, and are not designed or administered so as to provide for the needs of the seriously mentally ill.

42.    A correctional environment, calibrated to provide safety and order, is incongruous with the particular needs of the seriously mentally ill, and results in these

**COMPLAINT** - 14

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

129645.0002/8075328.1

people spending more time in solitary confinement, where their mental health further deteriorates. This deterioration is in direct conflict with the state's interest in prompt evaluation and treatment so that the individual may be brought to trial, especially for individuals whose illnesses become more habitual and harder to treat while they wait in isolation.

43.     In some jails seriously mentally ill are routinely held in a solitary lockdown for twenty-three hours out of every day for reasons unrelated to their mental health needs. These detainees are placed in solitary confinement because they are victimized by other inmates, or because symptoms of their illnesses prevent them from following generally applicable rules or behavioral expectations.

44.     The seriously mentally ill are placed in solitary confinement for their erratic or unpredictable behavior, not as punishment for breaking the rules, but to prevent them from continuing to break other rules which may result in additional charges or some other more serious form of punishment. These same solitary confinement cells are used to punish other inmates for bad behavior. These seriously mentally ill detainees cannot enter or exit their cells freely and are not encouraged to interact with other people. This treatment is clinically destructive to these individuals' mental health.

45.     Incarceration, generally, is destructive for the seriously mentally ill for several reasons. To provide a few examples:

a.   While waiting for long periods of time in local jails, the seriously mentally ill are not receiving the mental health treatment they need.

b.   Their conditions worsen not only because of lack of treatment, but because prolonged incarceration exacerbates mental illness, making symptoms more intense and more permanent, and reducing the likelihood the person's competency can ever be restored.

c.   Incarceration increases the likelihood of suicide.

**COMPLAINT** - 15

d.   Incarceration also unnecessarily exposes the seriously mentally ill to harmful conditions such as jail overcrowding, which leads to increased violence among inmates and to the targeting of individuals perceived as weak.

e.   Because the seriously mentally ill are stigmatized for what others perceive as erratic and unpredictable behavior, they are less likely to find a social support network within the jail and therefore are less successful than others at navigating the jail environment, increasing their feelings of isolation, terror, despair, and clinically traumatic experiences.

46.   Defendants have been aware of the above-described detrimental effects of housing seriously mentally ill pretrial detainees in the Jail for years. At the very latest they were aware after the April 2, 2015, Trueblood decision.

**B. Mr. Wolfclan's Pre-Trial Detention While Awaiting Restorative Services.**

47.   On September 9, 2022, Mr. Wolfclan was arraigned in Renton Municipal court and a competency evaluation was ordered.

48.   Subsequently on September 12, 2022, he was evaluated and on September 25, 2022, it was reported to the court that he required competency restoration.

49.   On October 3, 2022, the Renton Municipal Court ordered restoration services.

50.   While waiting for these restoration services, Mr. Wolfclan was bailed out of jail by family members, but without restoration services or other support, he was rearrested and again found incompetent.

**COMPLAINT** - 16

51.     On April 5, 2023, Mr. Wolfclan was arraigned and found incompetent to proceed by Pierce County Superior Court and ordered to be evaluated under RCW Chapter 10.77.

52.     On April 6, 2023, Mr. Wolfclan was arraigned and found incompetent to proceed by Pierce County District Court and ordered for further evaluation under RCW Chapter 10.77.

53.     On April 10, 2023, a forensic psychologist again found Mr. Wolfclan incompetent to proceed under RCW Chapter 10.77.

54.     On April 13, 2023, a related report was served on all parties concluding Mr. Wolfclan was incompetent to stand trial under RCW 10.77 and was diagnosed with unspecified schizophrenia Spectrum and other psychotic disorder.

55.     On April 19, 2023, the Pierce County Superior Court ordered competency restoration.

56.     Likewise on April 26, 2023, the Pierce County District Court ordered competency restoration.

57.     The Court ordered that Mr. Wolfclan be transported and admitted to the treatment facility by the earlier of 7 days of DSHS's receipt of the order, or 14 days from the date of the order as required by statute, and case law, including Trueblood v. Washington State Department of Social and Health Services.

58.      Mr. Wolfclan was not admitted to Western State Hospital until August 15, 2023, over 315 days from the initial competency restoration order enter on October 3, 2022, and 119 days after the April 19, 2023, Pierce County Superior Court order.

**COMPLAINT** - 17

LOWE GRAHAM JONES ₚₗₗc

59.     During Mr. Wofclan's pre-trial detention he experienced extreme inhumane conditions.

60.     On April 8, 2023, Mr. Wolfclan was transferred from Pierce County Jail general population cell block 4 South B to "Beautiful Minds" cell block 3 North A.

61.      As soon as he arrived at cell 6-7 in 3 North A, Mr. Wolfclan recognized the sewage problem he complained about during a prior detainment in Pierce County persisted, and he was doomed to another term in these unsanitary, inhumane conditions.

62.     The toilet in the Cell he was assigned was filled with raw sewage emitting noxious sewer gases, and his cellmate was sleeping or otherwise unconscious. The noxious gases gave Mr. Wolfclan an immediate headache and anxiety at the realization that he would be stuck in the inhumane conditions he suffered in 2020.

63.     Returning to the unit after two years, Mr. Wolfclan reports that the conditions have worsened since 2020, with sewage odor being as much as seven times worse. He witnessed his cellmate throwing up, suffering diarrhea, and being incapable of eating for as many as four days. He witnessed another resident who was moved after their eyes swelled shut and a resident who was put on an IV due to being unable to eat in the conditions. The detainee whose eyes swelled shut was later moved to solitary confinement because after he was returned to cell block 3 North A he told guards he was suicidal due to the conditions.

64.     While detained in cell block 3 North A, Mr. Wolfclan was placed on medication for headaches, allergies, upset stomach, coughing, mucus, and other respiratory problems caused by the disgusting conditions that Pierce County refuses to remedy.

**COMPLAINT** - 18

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

65.     On the morning of April 9, 2023, Mr. Wolfclan woke to find that the toilet had overflowed and his cell floor was covered in raw sewage—conditions he was forced to eat his breakfast in.

66.     Mr. Wolfclan also noticed that what appears to be black mold is falling out of a vent in the unit 3 North A showers. And that the cell block 3 North A floors are covered in black grime related to the raw sewage flooding the cells. The black grime sticks to detainees' socks causing it to spread to their blankets and bed.

67.     When one cell flushes, the adjoining cell's toilet backflushes raw sewage into the other cell. In at least four cases this resulted in raw sewage backflushing onto Mr. Wolfclan's anus and genitals.

68.     As a result, Mr. Wolfclan developed an open sore caused by exposure to raw sewage.

69.     Mr. Wolfclan requested a medical check related to the sores, and correctional officers mislabeled the request as for an STD check.

70.     Mr. Wolfclan reports that the conditions are so bad that Corrections Officers are bribing unit workers with candy bars to pour soapy water down the 10-11 sewage drainage pipes, even though this does not fix the problem.

71.     The noxious sewer gases are everywhere in the 3 North A cell block, including the cells and dayroom. The smell persists all day, every day. There is no option for the detainees to get away from it, making it difficult to eat or breathe with the ever-present, overwhelming stink.

72.     Mr. Wolfclan and other inmates he has witnessed attempted to cope with the conditions by pacing in their cells, or through prayer. In both cases, they are forced to walk

**COMPLAINT** - 19

or even prostrate themselves on the floors that are persistently contaminated with raw sewage, and which they do not have sanitation supplies to clean.

73.     Mr. Wolfclan was baptized in a Christian congregation at the Champions Center Church on January 29, 2022.

74.     As part of Mr. Wolfclan's religious practice he regularly prostrates himself to God, placing his forehead to the ground in a form of kissing reverence to his savior's feet that he understands to be consistent with Revelations 14:1 which references "144,000 who had his name and his Father's name written on their foreheads."

75.     Due to his authentic religious beliefs and the inhumane conditions, he was placed in, Mr. Wolfclan was forced to kiss the raw sewage-infested floors of his cell.

76.     On April 8, 2023, after being denied access to cleaning equipment, Mr. Wolfclan requested to submit a grievance, as he had in 2020, but was informed by cluster officers working under/with Captain Matthew Dobson, and Sergeant Anthony Mastandrea that they no longer hand out grievances for the unsanitary conditions caused by the long-term plumbing issues.

77.     Throughout his detainment in Cell Block 3 North A Mr. Wolfclan made regular requests to enter grievances related to the inhumane conditions which were denied.

78.     After making daily complaints about the inhumane conditions, Mr. Wolfclan was threatened that if he continued, he would be disciplined. When he continued, he was placed on cell lockdown and later ordered to stick his own finger down his throat while observing correctional officers laughed.

79.     After filing his initial complaint on May 2, 2023, on May 6, 2023, Mr. Wolfclan was transferred to a suicide observation cell in cell block 3 North A.

**COMPLAINT** - 20

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

80.     On information and belief a prison guard ordered the cell Mr. Wolfclan was transferred to not to be cleaned before his transfer.

81.     The suicide observation cell Mr. Wolfclan was transferred to was covered in feces when he arrived and suffered from back flushing issues similar to the 3 North A cell block.

82.     On May 9, 2023, Mr. Wolfclan agreed to be transferred to the general population to avoid further exposure to the feces-covered, segregated, suicide observation cell.

83.     On information and belief, knowing Mr. Wolfclan suffered from schizophrenia, and extreme anxiety disorder, and knowing he was both physically and sexually abused as a child—as disclosed in his Mental Health Evaluation—Defendants intentionally transferred Mr. Wolfclan to a cell with a convicted violent child rapist.

84.     Plaintiff was subjected to an objectively serious deprivation of safe, sanitary, and humane conditions that amounts to a denial of "the minimal civilized measure of life's necessities."

85.     On information or belief, the policies and practices established by Defendants unconstitutionally delayed Mr. Wolfclan's transfer to Western State Hospital

86.     On information or belief Defendants have an established practice of holding civilly committed patients for extended periods of time in beds required by law to be available to Trueblood Plaintiffs.

87.     On information or belief DSHS has a practice of employing an algorithm that does not prioritize pre-trial detainees with severe clinical presentations.

**COMPLAINT** - 21

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

88.     On information or belief DSHS has a policy or practice of prioritizing civil detainees over forensic detainees.

89.     On information or belief Jilma Mensesses was aware of and approved of a Washington State Hospital policy to prioritize civil conversion cases ahead of forensic cases and was aware that this policy would negatively impact Trueblood class members including Mr. Wolfclan.

90.     Defendants, including Jilma Menesses, were deliberately indifferent to the urgent medical and psychiatric needs of forensic detainees, including Mr. Wolfclan, by prioritizing civil detainees over forensic detainees.

91.     Defendants, including Jilma Menesses, were deliberately indifferent that forensic detainees including Mr. Wolfclan would face indefinite confinement in conditions that exacerbated their underlying medical conditions, by prioritizing civil detainees over forensic detainees.

## V. Claims

## Count 1 - NEGLIGENCE, GROSS NEGLIGENCE, AND NEGLIGENCE PER SE

92.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

93.     At all material times, all Defendants owed Mr. Wolfclan the duty to act with due care in the execution and/or enforcement of any right, law, or legal obligation.

94.     At all material times, each Defendant owed Mr. Wolfclan the duty to act with reasonable care.

**COMPLAINT** - 22

95.     These general duties of reasonable care and due care owed to Mr. Wolfclan by all.

96.     Defendants include, but are not limited, to the following specific obligations:

a.     To provide, or have provided, prompt and timely access to court ordered and/or prescribed inpatient psychiatric treatment, including transportation and admission

b.     To provide safe and appropriate jail custody for Mr. Wolfclan, including reasonable classification, monitoring, and housing, including placing him in mentally and physically appropriate housing.

c.     To obey and execute the Order of the District Court that ordered Mr. Wolfclan to be admitted "into a program for mental health treatment and restoration of competency."

d.     To execute the recommendations of a mental health professional to transfer Mr.Wolfclan to a facility where he could obtain "inpatient psychiatric treatment."

e.     To provide and/or summon necessary and appropriate mental health and medical care for Mr. Wolfclan.

f.     To use generally accepted law enforcement and Jail procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill and/or emotionally disturbed person.

g.     To refrain from abusing their authority granted to them by law.

h.     To refrain from violating Plaintiffs' rights guaranteed by the United States Constitution, as set forth above, and as otherwise protected by law.

**COMPLAINT** - 23

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

i.      Appropriately train, supervise, and discipline employees and agents.

97.     By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care owed to Mr. Wolfclan, which foreseeably resulted in the suffering of damages by Mr. Wolfclan.

98.     Defendants are vicariously liable for the acts and/or omissions of their employees and agents as described herein.

99.     As a proximate result of Defendants' negligence, Mr. Wolfclan sustained injuries and damages, and against each listed Defendant in this Count is entitled to general and special damages in an amount to be proven at trial.

100.    Because Defendants had a special relationship with Mr. Wolfclan, the defenses of assumption of risk and contributory negligence do not apply.

### COUNT 3 – TORTIOUS FAILURE TO KEEP HEALTH AND SAFETY

101.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

102.    Defendants have a duty to ensure detainees in their under their government authority, are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.

103.    Defendants breached that duty by housing Mr. Woflcan in cell block 3 North awhile awaiting competency restoration, with toilets continuously leaking sewage gases into the confined space and repeatedly flooding cells with raw sewage.

COMPLAINT - 24

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

104.    This breach, which exposed Plaintiff to raw sewage, and noxious gases, and prevented Plaintiff from effectively cleaning the raw sewage, was the direct cause of physical and mental harm to Plaintiff during his detention in cell block 3 North A.

105.    This breach is the proximate cause of the physical and mental harm caused to Plaintiff during his detention in cell block 3 North A.

106.    Plaintiff suffered injury caused by the inhumane and unsanitary conditions.

**COUNT 4 - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

107.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

108.    Defendants' negligence, deliberate indifference, and discrimination, as described above, has caused Mr. Wolfclan emotional distress.

109.    As a direct and proximate result, Mr. Wolfclan suffered damages, and will continue to incur substantial damages, in an amount to be established at trial.

**COUNT 5 – OUTRAGE**

110.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

111.    Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

112.    Defendants' conduct was outrageous and extreme.

**COMPLAINT** - 25

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

129645.0002/8075328.1

113.    Defendants' acts, as complained above, are intolerable in a civilized community.

114.    As a result of Defendants' conduct, Mr. Wolfclan has sustained injuries and damages,

115.    and against each listed Defendant in this Count is entitled to general and special damages in an amount to be proven at trial.

## VI.    JURY DEMAND

116.    Plaintiff hereby demands a trial by jury.

## VII.    AMENDMENTS

117.    Plaintiff hereby reserves the right to amend this Compliant.

## VIII.   RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

1.    Adjudge and declare that the actions, customs, conditions, policies, and practices described in this Complaint violated Mr. Wolfclan's rights under the federal and state constitutions and other applicable laws.

2.    Compensatory damages in an amount according to proof, which is fair, just, and reasonable.

3.    Such other and further relief as justice may require.

Dated this 15th day of August 2024.

LOWE GRAHAM JONES PLLC

Mitchell D. West, WSBA No. 53103
Mark P. Walters, WSBA No. 30819

COMPLAINT - 26

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

129645.0002/8075328.1

west@LoweGrahamJones.com
walters@LoweGrahamJones.com
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
T: 206.381.3300
F: 206.381.3301

COMPLAINT - 27

129645.0002/8075328.1